UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RIVER WEST PLAZA-CHICAGO, LLC, | ) | Case No. 09-46258 |
| d/b/a JOFFCO SQUARE, | ) | |
| | ) | Honorable Eugene R. Wedoff |
| Debtor. | ) | |
| | ) | Hearing Date: December 9, 2009 at 9:30 a.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **December 9, 2009 at 9:30 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Eugene R. Wedoff in the courtroom usually occupied by him, Courtroom No. 744, in the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, Illinois, or before any judge who may be sitting in his place or stead, and shall then and there present the **Motion for an Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of Cash Collateral and (III) Authorizing the Debtor to Obtain Unsecured Financing Pursuant to Section 364(b)**, a copy of which is attached hereto and hereby served upon you, at which time and place you may appear as you see fit.

Dated: December 7, 2009

**RIVER WEST PLAZA-CHICAGO, LLC, d/b/a JOFFCO SQUARE**

By: /s/ David L. Kane
       One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)

{33195: 002: 00498916.DOC :7 }

## CERTIFICATE OF SERVICE

    I, David L. Kane, an attorney, certify that on December 7, 2009, I caused copies of the attached **Notice of Motion** and **Motion for an Order (I) Authorizing Use of Cash Collateral and Granting Adequate Protection, (II) Approving the Form and Method of Notice of, and Scheduling, the Final Hearing on the Use of Cash Collateral and (III) Authorizing the Debtor to Obtain Unsecured Financing Pursuant to Section 364(b)** to be served (i) via electronic notice on the parties noted in the Court's CM/ECF system, (ii) via overnight mail on the Debtor's List of 20 Largest Unsecured Creditors filed in this Chapter 11 case, and (iii) upon the following parties as noted:

**Via Overnight Mail**
Alvin L. Kruse, Esq.
Seyfarth Shaw LLP
131 South Dearborn Street
Suite 2400
Chicago, IL 60603-5577
*Counsel to Bank of America, N.A.*
Email: akruse@seyfarth.com

**Via Overnight Mail**
William T. Neary (U.S. Trustee)
Office of the U.S. Trustee, Region 11
219 South Dearborn Street
Room 873
Chicago, IL 60604

                                                            s/ David L. Kane

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RIVER WEST PLAZA-CHICAGO, LLC, | ) | Case No. 09-46258 |
| d/b/a JOFFCO SQUARE, | ) | |
| | ) | Honorable Eugene R. Wedoff |
| Debtor. | ) | |
| | ) | Hearing Date: December 9, 2009 at 9:30 a.m. |

**MOTION FOR AN ORDER (I) AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (II) APPROVING THE FORM AND METHOD OF NOTICE OF, AND SCHEDULING, THE FINAL HEARING ON THE USE OF CASH COLLATERAL; AND (III) AUTHORIZING THE DEBTOR TO OBTAIN UNSECURED FINANCING PURSUANT TO SECTION 364(B)**

River West Plaza-Chicago, LLC, d/b/a Joffco Square, debtor and debtor-in-possession in the above-captioned case ("Joffco" or "Debtor"), hereby moves this Court (the "Motion")[1] for the following:

(a)   That the Court conduct a preliminary hearing to consider the Motion (the "Interim Hearing") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

(b)   That after the Interim Hearing, the Court enter an interim order, in a form substantially the same as that attached to this Motion (the "Interim Cash Collateral Order"), authorizing the Debtor, pursuant to sections 363 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rule 4001(b) of the Bankruptcy Rules, *inter alia*, to use the Cash Collateral (as defined hereafter) of the Lender (as defined hereafter) to fund the expenses set forth in the Operating Budget upon the terms and conditions set forth

---

[1] The Debtor's proposed Interim Cash Collateral Order (as defined hereafter) is attached hereto. The Final Order (as defined hereafter) will be filed separately. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Interim Cash Collateral Order.

in the Interim Cash Collateral Order and to grant adequate protection, pursuant to sections 363(c)(2)(A) and 363(e) of the Bankruptcy Code, to the Lender pending a final hearing on this Motion;

(c) That the Court schedule a final hearing (the "Final Hearing") to consider entry of a final Cash Collateral order (the "Final Order") authorizing on a final basis, *inter alia*, the use of the Lender's Cash Collateral and the grant of adequate protection; and

(d) That the Court authorize the Debtor to obtain unsecured financing pursuant to the Member Unsecured/Admin Loan (as defined hereafter). In support of this Motion, the Debtor relies on the *Declaration of Amy Joffe in Support of First Day Motions and Orders*, filed contemporaneously herewith. In further support of this Motion, the Debtor respectfully represents as follows:

## CASH COLLATERAL SUMMARY

1. By this Motion, the Debtor seeks the entry of the Interim Cash Collateral Order authorizing it to use certain cash collateral of the Lender (as defined hereafter), which generally consists of rental income from Joffco Square (as defined hereafter). It is critical for the Debtor to use such cash collateral to sustain sufficient working capital to finance its ongoing postpetition business operations until it confirms a plan of reorganization.

2. The Debtor proposes to use cash collateral on an interim basis for a period of approximately 15 days pursuant to the Operating Budget attached as **Exhibit A** hereto and to the Interim Cash Collateral Order (the "Operating Budget"). The Debtor requests that the Court schedule a final hearing no earlier than fifteen (15) days following the date the Court enters the Interim Cash Collateral Order. The proposed adequate protection the Debtor expects to provide to the Lender is the continued operation and maintenance of Joffco Square, which will preserve

the value of the Lender's collateral. The Debtor is not providing the Lender with any additional liens, nor has the Debtor included any of the provisions identified in Local Rule 4001- 2(A)(2)(a) through (j) in the Interim Cash Collateral Order.

3. The Debtor proposes that its right to use the cash collateral shall expire on the earliest to occur of any of the Termination Events set forth in Paragraph 32. On and after the occurrence of a Termination Event, the Debtor will immediately cease using any of the cash collateral; provided, however, that the Debtor reserves the right to seek Court authorization to continue to use such cash collateral.

## JURISDICTION

4. On December 7, 2009 (the "Petition Date"), Joffco filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101-1532 (as amended, the "Bankruptcy Code") with the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), commencing the above-captioned Chapter 11 case. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(c) and 1108 of the Bankruptcy Code.

5. No creditors' committee has been appointed in this case.

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. The bases for the relief requested herein are sections 361, 362(d)(3), 363 and 552 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

8. The Debtor is an Illinois limited liability company, with its principal office

located at 5 Revere Drive, Suite 200, Northbrook, Illinois 60062. The membership interests in the Debtor are held as follows: Amy Joffe: 44%; Melissa Norris: 44%; and Leon Joffe: 12%. The Manager of the Debtor is Amy Joffe. Mrs. Joffe runs the Debtor with primary assistance from the Debtor's Vice President of Finance, Virginia Wolfe, and its Financial Analyst, Daniel Treisman.

9. The Debtor acquired the property at 555 West Roosevelt Road, Chicago, Illinois (the "Property") in 2003 and has since developed a 95,000 square foot, five-story shopping center on the Property which includes 323 internal parking spaces (the "Center" or "Joffco Square"). All of the Debtor's assets are related to or derive from the Center and the Debtor does not hold any other property.

10. Joffco Square is approximately 83% leased and all tenants are in possession of their premises and are paying rent at the rates required under their leases. The largest tenant, Best Buy, occupies approximately 45,000 square feet under a lease which extends until January, 2024, with multiple renewal options thereafter. Rent is fixed on the Best Buy lease through 2014, and then increases for two successive five (5) year periods. Bed Bath & Beyond, the other primary tenant, occupies approximately 27,482 square feet of the second floor of the Center under a lease which extends until January, 2018, with multiple renewal options thereafter. Rent is fixed on the Bed Bath & Beyond lease during the initial ten (10) year term which concludes in 2018. Bed Bath & Beyond has the obligation to pay additional percentage rent up to $250,000 to the extent that its annual sales exceed $7,500,000. As of the Petition Date, Bed Bath & Beyond has not met these threshold sales figures for additional rent. Best Buy, Bed Bath & Beyond and CorePower Yoga (the third retail tenant) each is obligated to pay its proportionate share of real estate taxes and operating expenses. In addition, a cell tower is located on the roof of Center

under a lease which expires in February, 2013.

11.     The remaining 17% of usable space at Joffco Square (the "Available Space") has not been leased and has not yet been built out for tenant use. As of the Petition Date, the Debtor has engaged in preliminary discussions with Bed Bath & Beyond about leasing a portion of the Available Space, but no agreement has yet been concluded. Completion of the Available Space will require expenditure of additional funds for leasing commissions and tenant improvements.

12.     Debtor initially financed the acquisition and construction of the Center with a loan from LaSalle National Bank ("LaSalle") in the amount of $28,000,000 (the "Initial Loan"). The proceeds of the Initial Loan were to be disbursed as construction progressed, with LaSalle and the Debtor each paying a portion of the construction costs. In July, 2008, the Initial Loan was refinanced by Bank of America, N.A., as successor in interest to LaSalle ("Lender"), with a replacement loan in the amount of $27,000,000 (the "2008 Loan").

13.     The 2008 Loan is evidenced in part by a certain Construction Loan Agreement dated as of July 29, 2008 (the "Loan Agreement"), pursuant to which the Debtor has received financial accommodations and incurred additional obligations, including without limitation, obligations for payment or reimbursement of certain of the Lender's fees, costs and expenses. The 2008 Loan bears interest at a floating rate based on 30-day LIBOR plus two percent (2%). As part of the 2008 Loan, the Lender reduced its obligation to fund construction costs by $1,000,000 and required that the Debtor's members contribute an additional upfront cash "Equity Requirement" of $6,094,657. In order to satisfy this requirement, two of the Debtor's members, Ms. Joffe and Ms. Norris, each made interest-bearing unsecured loans to the Debtor in the principal amounts of approximately $3,000,000.

14.     The 2008 Loan is secured in part by a first mortgage on the Property and a limited

Guaranty of Payment and Completion executed by Leon Joffe, a minority interest holder in the Debtor. The Debtor's obligations under the Loan Agreement ("Obligations") are further secured by security interests and liens in and against most of the assets of the Debtor in favor of the Lender (the "Prepetition Collateral").

15. The Debtor further acknowledges that the Obligations and the security interests and liens in and against the Prepetition Collateral securing the Obligations are evidenced by certain loan, security and other collateral agreements between Lender and the Debtor, including a certain promissory note executed by the Debtor in favor of the Lender, and other agreements, documents, guaranties and instruments entered into, delivered or otherwise related to the Obligations and the Prepetition Collateral (collectively with the Loan Agreement, the "Lender Agreements").

16. During the course of the lending relationship with the Lender and its predecessor LaSalle, the Debtor has met each of its obligations under the original loan and the 2008 Loan, including the timely payment of all interest due. The Debtor has never been in default under the 2008 Loan. In addition, Joffco Square is cash flow positive and generates enough monthly income for the Debtor to pay all monthly overhead and operating expenses as they become due. Moreover, the income generated at Joffco Square is sufficient to cover all monthly interest payments to the Lender under the Debtor's proposed plan of reorganization.

17. The 2008 Loan matured on November 1, 2009, and the Debtor acknowledges that it has not met the required debt service coverage ratio necessary to extend the 2008 Loan. The Debtor further acknowledges that, as of the opening of business on the Petition Date, the aggregate total of the Obligations outstanding under the 2008 Loan is $26,158,002. As of the Petition Date, the Debtor's aggregate assets total approximately $27,000,000 and the Debtor's

liabilities total approximately $32,500,000 including certain subordinated notes in favor of the members of the Debtor[2].

18. Pursuant to sections 363(a) and 552(b) of the Bankruptcy Code, certain cash and cash equivalents held by the Debtor as of the commencement of the above-captioned bankruptcy case and the proceeds, products, offspring, rents or profits of the Prepetition Collateral received by the Debtor after the commencement of the case constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and in which the Lender has an interest within the meaning of sections 363(c)(2) and 363(e) (the "Cash Collateral").

## RELIEF REQUESTED

19. By this Motion, the Debtor seeks, among other things:

(a) authorization pursuant to the Interim Cash Collateral Order under Bankruptcy Code sections 361, 362(d)(3)(B), 363(c), and 363(e) of the Bankruptcy Code to use the Cash Collateral and provide adequate protection to the Lender with respect to the Debtor's use of such Cash Collateral and other diminution in value of the Prepetition Collateral;

(b) the continued payment of interest on the Loan at the contractual non-default rate and pursuant to the terms applicable under the Lender Agreements;

(c) the scheduling of the Final Hearing on this Motion and the establishment of notice procedures in respect of the Final Hearing to consider entry of the Final Order approving the use of Cash Collateral and the granting of adequate protection to the Lender on a final basis; and

(d) authorization pursuant to section 364(b) of the Bankruptcy Code to obtain postpetition unsecured financing solely to finance payment of the Debtor's professional fees and expense for the Chapter 11 case.

---

[2] The Debtor's estimated liabilities include $6,000,000 payable pursuant to subordinated notes to certain of the Debtor's members. Under the Debtor's proposed Plan of Reorganization, such members are willing to subordinate these notes to the Lender.

## BASIS FOR RELIEF

### A. Use of Cash Collateral

20. The Debtor has determined that the use of the Cash Collateral is necessary for the Debtor to maintain sufficient liquidity so that it may continue to operate its business in Chapter 11 in the ordinary course of business and be positioned to perform under existing and future leases at the Property. Without immediate access to the Cash Collateral, the Debtor will not be able to pay the ongoing costs of running its business and administering its estate, the result of which will be the irreparable damage to the value of the Debtor and thus the value of the Lender's Prepetition Collateral. Indeed, the Debtor has determined that if it is not allowed the use of the Cash Collateral, it could not maintain its business during this Chapter 11 case and proceed to confirmation of a plan of reorganization.

21. Access to the Cash Collateral will provide the Debtor's customers, vendors, and tenants with the requisite security that the Debtor will be able to continue conducting its business in the ordinary course without interruption. The use of Cash Collateral is necessary to run Joffco Square properly and thereby generate additional Cash Collateral from the ongoing rental payments made by the Debtor's tenants.

22. Moreover, access to the Cash Collateral will enable the Debtor to further maximize the value of its assets for the Lender, its estate and its creditors.

23. Section 363(c)(2) of the Bankruptcy Code provides that a debtor "may not use, sell, or lease cash collateral ... unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." Additionally, section 363(e) provides that, on request of an entity that has an interest in cash collateral to be used, the court may condition such

use as is necessary to provide adequate protection of such interest. The Debtor requests that the Court approve its use of the Cash Collateral to pay wages, salaries and operating expenses incurred during the pendency of this case, all as reflected in the Operating Budget.

24. Bankruptcy Rule 4001(b) provides that if, as here, a debtor seeks to use cash collateral during the 15-day period following the filing of a motion requesting authorization to use such cash collateral, the court may authorize the use of "only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending final hearing." Bankruptcy Rule 4001(b)(2). After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business.

25. The Debtor's request for interim use of Cash Collateral pursuant to the Interim Cash Collateral Order is necessary to avoid immediate and irreparable harm to the Debtor. To ensure a smooth transition into Chapter 11 and the maximization of the value of the Debtor's assets, it is imperative that the Debtor be authorized to use Cash Collateral pursuant to section 363 of the Bankruptcy Code to avoid immediate and irreparable harm to the Debtor's estate. Absent the use of Cash Collateral for its continuing business operations, the Debtor will be unable to fund its operating expenses in the ordinary course, which would likely result in a shutdown of operations from which they could not recover. Consequently, if interim relief is not obtained, the Debtor's attempt to reorganize may well be doomed at the outset, to the detriment of the Debtor's estate and creditors.

26. Moreover, without immediate access to postpetition financing, the Debtor expects to suffer an acute cash shortage in the coming days that threatens its ability to maintain operations in the short term - even through the date of the Final Hearing. Accordingly, the Debtor requests that the Court grant the relief requested herein on an interim basis, subject to

final approval at the Final Hearing.

B.     **Adequate Protection**

27.    Pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtor may not use the Cash Collateral without the consent of the Lender or authority granted by the Court. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property to be used by the Debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. See 11 U.S.C. § 363(e).

28.    Pursuant to *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372 (1988), the interest in property entitled to adequate protection under section 363(e) is equal to the value of the collateral that is subject to the secured creditor's lien. Accordingly, a debtor can provide adequate protection to an undersecured creditor by maintaining the value of the collateral. *See, e.g., In re Addison Properties. Ltd. P'shi p*, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995) ("it is now established that 'adequate protection' is meant only to assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property, rather than to compensate the creditor for the bankruptcy-imposed delay in enforcing its rights in that property."). Because the Debtor has filed its Plan of Reorganization (the "Plan") contemporaneously with the filing of its Chapter 11 case, there will be no undue delay in this case, and thus no opportunity for the value of the Prepetition Collateral to decline.

29.    As adequate protection for the Lender's interest in the Cash Collateral, the Debtor proposes to use the Cash Collateral to pay all overhead and operating expenses of Joffco Square, as more specifically described in the Operating Budget attached as **Exhibit A** hereto and to the proposed Interim Cash Collateral Order.[3] By so doing, the Debtor will be able to maintain Joffco

---

[3] All expenses of the Debtor during the pendency of this Chapter 11 Case will paid by the Debtor from the Lender's Cash Collateral in the ordinary course of its business pursuant to the Operating Budget. The fees and expenses of

Square — *i.e.*, the Lender's collateral—and prevent it from diminishing in value. The Debtor submits that expending the Cash Collateral on the necessary expenses of Joffco Square itself can only preserve the value of Joffco Square and, thus, the Lender's mortgage interest. *See Federal National Mortgage Ass'n v. Dacon Bolingbrook Assoc. L.P.*, 153 B.R. 204, 215 (N.D. Ill. 1993) ("Furthermore, so long as Rents are used to preserve collateral, including maintenance and operating expenses of the subject Property, the Rents will also be adequately protected."). In fact, all expenditures from the Cash Collateral set forth in the Operating Budget are necessary to maintain and preserve the value of Joffco Square, which is the Lender's fundamental collateral.

30.    In addition, the Debtor will continue to make interest payments (from rental income received) to the Lender pursuant to the Operating Budget on the full outstanding principal balance of the 2008 Loan at the "applicable nondefault contract rate" within the meaning of section 362(d)(3)(B)(ii) of the Bankruptcy Code.

31.    An appraisal of Joffco Square prepared at the direction of the Lender on June 17, 2009 (a) estimates the current "Market Value As Is" of the Prepetition Collateral at $23,700,000 and (b) further estimates that the fully-leased property has a "Prospective Value Upon Stabilization" of $26,000,000. While the Debtor maintains that the actual value of Joffco Square is higher than the Lender's appraisal, it is well accepted that a debtor's payment of non-default contractual interest more than adequately protects the interests of an [arguably] undersecured lender. *See Timbers*, 484 U.S. at 372. Here, the Debtor submits that the Debtor's payment of interest to the Lender at the contractual non-default rate amply protects the Lender's lien rights even if the Court should ultimately conclude that the Lender is either slightly undersecured or slightly oversecured.

---

the Debtor's professionals, however, will instead be financed by certain members of the Debtor as set forth in Section D hereto.

32. Under the Interim Cash Collateral Order and Final Order, the following shall constitute "Termination Events":

(a) entry of an order converting the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

(b) entry of an order dismissing or suspending the Chapter 11 case;

(c) entry of an order appointing a trustee under section 1104 of the Bankruptcy Code;

(d) entry of an order appointing an examiner under section 1104(b) with powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code;

(e) the payment by the Debtor, without the Lender's written consent in each instance, of aggregate disbursements on a cumulative basis for the period from Monday of the calendar week after which this case was filed through the end of each calendar week thereafter, taking each such period as one accounting period, in excess of, respectively, 125% of such disbursements projected to be made in the Operating Budget for each such respective period thereafter; or

(f) the Debtor breaches or otherwise fails to abide by any of the terms or provisions of the Interim Cash Collateral Order or Final Order.

33. The Debtor requests that the Court find that the foregoing adequate protection to be granted to the Lender is reasonable and sufficient to protect its interests.

## C.  Interim Approval

34. Bankruptcy Rule 4001(b) governs the procedures for the use of cash collateral, and provides, in relevant part:

> "The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 15 day period expires,

{33195: 002: 00498916.DOC :7 }            14

> but the court may authorize the use of only that amount of cash
> collateral as is necessary to avoid immediate and irreparable harm
> to the estate pending a final hearing."

Fed. R. Bank. P. 4001(b)(2).

35. Accordingly, the Court is empowered to conduct a preliminary expedited hearing on the Motion and authorize the interim use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate. The Debtor seeks entry of the Interim Cash Collateral Order to avoid immediate and irreparable harm to its estate, its assets and its creditors. This relief will enable the Debtor to operate its business in the ordinary course and to pay necessary expenses and avoid immediate and irreparable harm to its estate pending a final hearing on the Motion. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Court is authorized to grant the relief requested by this Motion.

### D. Post-Petition Unsecured Financing

36. Section 364(b) of the Bankruptcy Code states that:

> The court, after notice and a hearing, may authorize the trustee to
> obtain unsecured credit or to incur unsecured debt other than under
> subsection (a) of this section, allowable under section 503(b)(1) of
> this title as an administrative expense.

11 U.S.C. 364(b).

37. Pursuant to Section 364(b) of the Bankruptcy Code, the Debtor hereby also seeks authorization to obtain post-petition unsecured financing from two of its members in order pay the Debtor's professional fees incurred during the pendency of this Chapter 11 case, in an amount not to exceed $400,000 (the "Member Unsecured/Admin Loan") without further order of this Court. Any amounts lent to the Debtor as part of the Member Unsecured/Admin Loan shall be entitled to administrative expense priority under Section 501(b)(1) of the Bankruptcy Code, as contemplated by Section 364(b) of the Code. The principal balance of any such loan amounts

shall bear interest at the rate of 3.25% per annum.

38. All amounts obtained by the Debtor pursuant to the Member Unsecured/Admin Loan shall be obtained post-petition in order to pay administrative expenses incurred post-petition, namely the Debtor's Chapter 11 professional fees. As such, the Member Unsecured/Admin Loan is outside the ordinary course of the Debtor's business and the Debtor would be otherwise unable to incur such financing without the granting of an administrative expense priority as contemplated by section 364(b). This loan, therefore, will be unsecured and the Debtor's obligation to repay the loan and interest thereon will be an administrative priority expense claim.

39. The total outstanding balance in principal and interest on the Member Unsecured/Admin Loan shall be payable as set forth more fully in <u>Section 6.7</u> of the Debtor's Plan and the form of Member Unsecured/Admin Note attached as **Exhibit B** hereto, as follows:

(a) Up to fifty percent (50%) of the outstanding balance of all accrued interest and up to fifty percent (50%) of the principal amount of the outstanding balance of the Member Unsecured/Admin Loan may be repaid on the date that is sixty (60) days after the Effective Date of the Plan; and

(b) The remaining principal balance of the loan shall continue to bear interest thereafter at 3.25% per annum, and it shall be repaid pursuant to the terms of the Member Unsecured/Admin Note.

40. The Debtor's ability to obtain the Member Unsecured/Admin Loan will serve as additional adequate protection for the Lender by eliminating an administrative expense and providing for the payment of the Debtor's professional fees. Repayment of the Member Unsecured/Admin Loan will be subordinated to the claims of the Lender in the manner provided in the Member Unsecured/Admin Note.

41. Allowing the Debtor to obtain unsecured financing pursuant to the Member Unsecured/Admin Loan will be beneficial in two additional respects. First, the Debtor will not

need to use the Lender's Cash Collateral in order to pay professional fees incurred during the pendency of this Chapter 11 case. Second, the Debtor's ability to obtain funds via the Member Unsecured/Admin Loan will increase the Debtor's operating cash and thus its ability to make timely payments to mechanic's lien and unsecured creditors as set forth in the Plan. Accordingly, authorization to enter into the Member Unsecured/Admin Loan is in the best interests of the Debtor, its estate and its creditors.

### COMPLIANCE WITH RULE 4001 AND LOCAL RULE 4001-2

42.     Local Rule 4001-2, which governs cash collateral motions filed within this Judicial District, requires the Debtor to highlight certain provisions contained in the Interim Cash Collateral Order, identify the location of any such provision in such order, and state the justification for the inclusion of such provision. *See* Local Rule 4001(A)(2). The Debtor submits that none of the provisions contained in Local Rule 4001-2(A)(2)(a) through (j) are included in the Interim Cash Collateral Order attached hereto.

43.     Local Rule 4001-2 also requires that all cash collateral motions provide a summary of all provisions that must be highlighted under Local Rule 4001-2(A)(2) and a summary of the essential terms of the proposed usage of cash collateral. *See* Local Rule 4001-2(A)(3). Likewise, Bankruptcy Rule 4001(b) provides that if a cash collateral motion exceeds five pages, it must begin with a concise statement of the relief requested, which summarizes and identifies the location of certain material provisions in the applicable documents. *See* Bankruptcy Rule 4001(b)(1)(B). The Debtor asserts that it has complied with both Bankruptcy Rule 4001(b) and Local Rule 4001-2(A)(3) by providing the Cash Collateral Summary at the beginning of this Motion.

44.     Lastly, Local Rule 4001-2 provides that all cash collateral motions must provide a

budget covering the time period in which the order shall remain in effect. See Local Rule 4001-2(A)(4). In satisfaction of such requirement, the Operating Budget is attached to the Interim Cash Collateral Order as **Exhibit A**.

## NO PRIOR REQUEST

45. No prior motion for the relief requested herein has been made to this Court in this bankruptcy case.

## NOTICE

46. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) Bank of America, N.A. and its counsel; and (c) the Debtor's twenty (20) largest unsecured creditors as set forth in the schedule filed with the Debtor's petition. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter the Interim Cash Collateral Order; (ii) schedule the Final Hearing; (iii) authorize the Debtor to obtain unsecured financing pursuant to the Member Unsecured/Admin Loan and (iv) grant such other relief as the Court may deem just and appropriate.

Dated: December 7, 2009

Respectfully submitted,

**RIVER WEST PLAZA-CHICAGO, LLC, d/b/a JOFFCO SQUARE**

By: /s/ Forrest B. Lammiman
    One of Its Attorneys

Forrest B. Lammiman (ARDC No. 6208632)
David L. Kane (ARDC No. 6277758)
MELTZER, PURTILL & STELLE LLC
300 South Wacker Drive, Suite 3500
Chicago, Illinois 60606
(312) 987-9900
(312) 987-9854 (facsimile)